## -UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | ) | |
| PETER W. GUBELLINI, | ) | |
| DEBTOR | ) | CHAPTER 7 |
| _____ | ) | CASE NO. 07-40280-JBR |
| ROBIN CANHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | AP. NO. 07-04094 |
| | ) | |
| PETER W. GUBELLINI, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OF DECISION

This matter came before the Court for a trial on Counts I & II of the Complaint of the Plaintiff, Robin Canha, objecting to the discharge of the Debtor, Peter W. Gubellini, pursuant to 11 U.S.C. §§ 727(a)(3) & (a)(5) of the Bankruptcy Code respectively. Count III was dismissed prior to trial. [Docket # 18]. At the close of the Plaintiff's evidence, the Debtor moved for a directed finding on Count II, which was not opposed and the Court granted. At the conclusion of the trial, the Court took Count I under advisement.

**DISCUSSION**

Section 727(a)(3) of the Bankruptcy Code provides that the Court shall not grant the debtor a discharge if the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The purpose and intent of section 727(a)(3) "is to make the privilege of discharge dependent on a true

presentation of the debtor's financial affairs." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006); *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999); *see In re Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) ("The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge."). Section 727(a)(3) does not "'require an impeccable system of bookkeeping,'" but merely records that "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.'" *In re Hegarty*, -- B.R. --, 2008 WL 5246475, at *6 (Bankr. D. Mass. 2008) (Hillman, J.) (quoting *In re Schifano*, 378 F.3d 60, 69 (1st Cir. 2004)).

The Plaintiff bears the initial burden "to prove two things: (i) that the debtor 'concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information;' and (ii) that the recorded information was information 'from which the debtor's financial condition or business transactions might be ascertained.'" *In re Keefe*, 380 B.R. 116, 120 (Bankr. D. Mass. 2007). The Plaintiff must prove these two elements by a preponderance of the evidence. *In re Sterman*, 244 B.R. 499, 504 (D. Mass. 1999). If the Plaintiff proves "these two elements, the burden shifts to the debtor to demonstrate that such act or failure to act was justified under the circumstances of the case." *In re Hegarty*, 2008 WL 5246475, at *6. In an action brought pursuant to section 727(a)(3), the Court should closely consider "the particular facts and circumstances of the debtor's case." *In re Ridley*, 115 B.R. 731, 733 (Bankr. D. Mass. 1990).

There was no evidence regarding concealment, mutilation, or falsification of records presented at trial. The only evidence presented at trial directly relevant to section 727(a)(3) was the Debtor's poorly detailed checking account register,[1] and the Debtor's testimony that he routinely disposed of all of his cancelled checks. At trial, the Plaintiff spent a great deal of time

2

attempting to impeach the Debtor's credibility and attempting to show that the Debtor transferred his real property in and out of a trust on several occasions. This evidence is not relevant to the Court's inquiry under section 727(a)(3), and is not a basis of the Court's decision.

As such, the Court is presented with a single issue: does the Debtor's failure to identify the payees of all of his checks and withdrawals from his checking account coupled with his routine disposal of all of his cancelled checks warrant a denial of his discharge pursuant to section 727(a)(3). For the following reasons, the Court finds that the answer to this question is yes.

The facts relevant to the Court's decision were not disputed at trial. The Debtor received his cancelled checks or copies thereof from his bank each month. He would reconcile the amounts drawn on the cancelled checks with his personal checking account register. After he confirmed that the numbers jived, the Debtor disposed of the cancelled checks. The Debtor's checking account register contains countless entries that are not accompanied by a description. These entries are denoted with "ATM" or a four digit check number, and several are for large sums of money. The Court was able to identify *some* of the "ATM" entries as debit purchases that the Debtor made at gas stations, grocery stores, etc., by referring to the Debtor's bank statements.[2] However, many of the "ATM" entries represent mere withdrawals, and the Court is unable to trace how those monies were spent. With the exception of the entries that correspond to the nine checks submitted by the Debtor as exhibits,[3] the Court is also unable to trace the entries that are accompanied by only four digit check numbers.

The Court thoroughly examined the Debtor's checking account register and bank statements for the years 2004 through 2006. After cross referencing the two documents, the Court was able to identify how $36,463 was spent, but was unable to identify how $27,300 was

3

spent in 2004. The Court was able to identify how $53,827 was spent, but was unable to identify how $27,414 was spent in 2005. Finally, the Court was able to identify how $37,257 was spent, but was unable to identify how $19,473 was spent in 2006. In the aggregate, the Court was able to identify how $127,547, or 63.2% of the Debtor's money was spent, but was unable to identify how $74,187, or 36.8% of the Debtor's money was spent during the relevant period. The inability to identify how such a high percentage of the Debtor's income was spent is very troubling.

The Plaintiff satisfied her initial burden to prove that the Debtor failed to keep or preserve recorded information from which his financial condition might be ascertained because the Debtor disposed of his cancelled checks and failed to describe how over one third of his income was spent. As such, the burden shifted to the Debtor to prove that his actions were justified under the circumstances of the case. *In re Hegarty*, 2008 WL 5246475, at *6.

In the course of this litigation, apparently the Debtor did not request copies of his cancelled checks from his bank. The Debtor did not convincingly explain why he disposed of the cancelled checks, and offered no explanation whatsoever as to why he did not request copies of them. *See In re Bailey*, 375 B.R. 410, 420 (Bankr. S. D. Ohio 2007) ("The court finds nothing in the record to suggest the Debtor lacked the sophistication, education or any other attribute necessary to produce copies of checks . . . or other evidence to explain where funds went from this single U.S. Bank account, when the Debtor conceded he used the same bank account for his personal banking and that he owes the Plaintiff money."); *In re Sethi*, 291 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) ("[I]t is the debtor who has the obligation of producing financial records in the first place from which the debtor's financial condition may be ascertained."). Without copies of the cancelled checks, the Court is left with the Debtor's checking account register and his bank

4

statements as the primary resources from which his financial condition can be pieced together.

The Debtor testified and had ample opportunity to explain why he maintained his checking account in this slipshod fashion. The Debtor explained that he would sometimes write out checks to purchase "socks" or other items at the "drugstore" and neglect to enter the payee's name in the checking account register if he had a line behind him. While the Court accepts this explanation for smaller purchases that were not described, it is not adequate for purchases in amounts of $438.74, $530.00, and $1,150.00 to name a few, nor an aggregate amount of $74,187 in three years. The Debtor did not even make an attempt to explain on what these larger sums of money were spent. Furthermore, the Debtor did not testify to any circumstances that the Court could infer would necessitate these expenses. In short, the Debtor failed to prove that recording his purchases in a lacksidasical manner and disposing of his cancelled checks was justified under the circumstances.

Attempting to glean the Debtor's financial condition from records that have such a high quantity of gaps would be an exercise of pure guesswork. *See In re Self*, 325 B.R. 224, 244 (Bank. N.D. Ill. 2005) ("The court should not be required to speculate as to the financial history or condition of the debtor, nor should the court be compelled to reconstruct the debtor's affairs."). Without even a hint of what over one third of the Debtor's income may have been spent on, an "intelligent inquiry" cannot be made of the Debtor's transactions, and the Court can only conclude that the Debtor has failed to keep and preserve records from which his financial condition might be ascertained. Accordingly, judgment will enter denying the Debtor of his discharge under 11 U.S.C. § 727(a)(3).

A separate order will issue.

Dated: March 6, 2009                                    By the Court,

5

*/s/ Joel B. Rosenthal*

_____
Joel B. Rosenthal
United States Bankruptcy Judge

[1] *See* Joint Ex. 15.
[2] *See* Joint Ex. 12.
[3] *See* Defs.' Exs. 16-23.